(81 Misc. Rep. 678.)

### BURGER v. ROBINSON et al.

(Supreme Court, Special Term, New York County.   July, 1913.)

PARTNERSHIP (§§ 302, 304*)—TERMINATION—RIGHTS OF PARTNERS.

Plaintiff and defendant R., having agreed to form a partnership, finally organized a corporation, and immediately after the articles were signed secured a long-term lease, to be assigned to a corporation then being organized. Thereafter R. elected to continue the business without plaintiff, and R. availed himself of the lease and certain machinery, for the value of which plaintiff was also liable; he having no participation in the profits of the business. *Held,* that plaintiff was not bound indefinitely to continue liable on such claims, and that R. would be required to secure a release of plaintiff's liability on the instruments jointly executed by them, or give an undertaking to protect plaintiff against such liability and permit a withdrawal of plaintiff's contribution of capital.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 699, 701, 702; Dec. Dig. §§ 302, 304.*]

Suit by William Burger against Morris Robinson and others. Decree for complainant.

Boudin & Liebman, of New York City, for plaintiff.

Chas. Stein, for defendants Robinson and Schmidt.

Harold C. Mendelson, of New York City, for defendant American Laundry Machinery Co.

DELANEY, J.   The complaint avers that heretofore, and on or about the 1st day of May, 1912, the plaintiff and the defendant Morris Robinson agreed to become copartners upon certain terms and conditions between them agreed; that in pursuance of the said agreement the plaintiff and the defendant Morris Robinson did go into the said steam laundry business under the firm name and style of White Swan Laundry Company, and continued therein until the present day; that in pursuance of the said agreement the plaintiff contributed to the common fund of the said copartnership divers sums of money amounting in the aggregate to over $3,000, and that the plaintiff has complied with all the terms and conditions of the said agreement on his part to be performed; that in pursuance of the said agreement, and in order to properly carry on the same, the plaintiff and the defendant Morris Robinson obtained a lease of the premises wherein said copartnership business was to be and is conducted, which said lease was executed by the Ittner Realty Company as landlord, and to the plaintiff and the defendant Morris Robinson as tenants, and in further pursuance of the said agreement plaintiff and defendant Robinson purchased and installed in said premises a steam laundry plant, etc.   The complaint then alleges a conspiracy to defraud; that the alleged conspirators are in possession of the business and property of the alleged copartnership, and have been guilty of acts prejudicial to the business and plaintiff's alleged rights as a partner, etc.

The essential facts adduced on the trial were as follows:   In the latter part of April, 1912, plaintiff and the defendant Robinson had several conversations looking to an agreement to enter into a copartnership.   These conversations terminated with an understanding that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

they should have a conference with a lawyer, who they intended would draw the necessary papers; for it was their understanding that the agreement should be in writing according to the forms of law. The plaintiff herein suggested the lawyer, and the defendant accepted the suggestion. When the parties called on the lawyer, accompanied by their relatives or friends, a discussion took place as to the terms of their agreement, and then the question arose as to the advantages of a corporation over a copartnership for their business, and it was finally agreed that a corporation should be formed. Articles of incorporation were drawn and signed. Immediately plaintiff and defendant Robinson set about securing a lease of suitable premises for the proposed business, and made contracts for the purchase and installation of machinery, thus jointly and severally incurring liability therefor. This course was adopted to expedite preparations pending the fulfillment of the various acts necessary to complete the incorporation. The plaintiff, it was understood, was to furnish $6,000 of the necessary capital, and the defendant Robinson $2,000. The capital to be furnished by the defendant Robinson was paid in and spent on the preparation for business almost at once. The plaintiff deposited in a bank to the joint account of himself and defendant Robinson $2,700 of the capital which he agreed to furnish; but shortly thereafter, having announced his alleged grievance, he would not allow this money to be used in the business then being formed, except on conditions which he endeavored to impose on defendant Robinson. This money still remains in bank. It would appear that the plaintiff had become distrustful of the corporation method, and resolved that the copartnership method, originally spoken of, should be adopted instead. Generally speaking, after that time the plaintiff insisted, from first to last, that he would accept no other arrangement. He seems to have regarded the agreement to incorporate as a nullity, and to believe, or feign to believe, that he had the right to reject it, for he insisted on having the business arrangement in the form it was contemplated when first discussed. He did not take this stand, however, until several days after the incorporation had been agreed on, and in the meantime the defendant Robinson, on the faith of the arrangement for the formation of a corporation, had incurred a large personal liability for machinery, etc., and had contributed all his agreed share of the capital of the proposed company, and it had been spent in the interest of the proposed business. With the exception of some trifling sums in cash and a month's rent, afterwards paid to prevent dispossession by the landlord, the plaintiff had contributed nothing which had been employed in the business.

In the earlier days of the disagreement several efforts were made to adjust their differences so that they might proceed with the business; but, as these efforts were fruitless, a proposition was made to release the plaintiff from all liability on the several contracts into which he and Robinson had entered, and to permit him to withdraw the money deposited to the joint account, and to pay him $250 for the fees of a lawyer whom the plaintiff had brought into the case for his own purpose. Although claiming himself the victim of a fraud, plaintiff refused the proposition, because he claimed that the lease which the defendant Robinson had secured was a valuable one;

and he wished a share in its value. He claimed that a fraud had been perpetrated on him, but was not content to disavow it and claim restitution. The evidence clearly established that there never was an agreement of copartnership. The final conference on the subject, when articles were to be signed, resulted in the adoption of the corporation plan, and both signed the articles of incorporation. The ground on which the action is brought is fraud, alleged to have been committed on the plaintiff by the defendants Robinson and one Schmidt and a lawyer not a party to this action, who the plaintiff claims conspired together. The lawyer in question never knew or met either plaintiff or defendants before the day when it is alleged the fraud was committed, and was the very man selected by the plaintiff to draw the papers desired. The conspiracy alleged is based on the fact that the lawyer in question, at the first meeting of the parties during the course of the conference, had a seemingly reasonable excuse to leave the room at the same time as the defendant Robinson left it and returned with him a few minutes later; that shortly thereafter the suggestion of incorporation was made, and that plaintiff was then misled by the lawyer's advice to adopt the corporation plan.

Plaintiff claims that he was ignorant of the law on the subject, and trusted in the advice given, and thereupon adopted the plan suggested. There is nothing in the proof that shows any act from which an inference of conspiracy could be made up to this time. So far as this occurrence of the simultaneous absence from the room of the lawyer and Robinson for a few minutes is concerned, surely it cannot raise an inference that any conspiracy had been concocted. The plaintiff claims that he was misguided as to the law by the lawyer; but, except that he did not afterward like the arrangements made, I do not see that, even if this were true, he suffered any harm, and ten days or more transpired before he made objection. Then he forbade any further pursuit of the plan to incorporate. A confusion followed the attempt of the plaintiff to prevent further prosecution of the incorporation, and, no doubt, many informal and injudicious acts were done by the parties; but these were largely occasioned by the misconception by the plaintiff of his rights and the obstinacy with which he insisted on having arrangements to his liking or not at all. There was no claim of any fraud, it would seem, until the suspicions of the plaintiff were in some way aroused by the belief that his control was not as absolute as he may have desired it to be.

Robinson seemingly tried to adjust himself to the awkward situation created by the plaintiff, not always with good judgment or decision; but his money was invested, and, on plaintiff's failure to contribute his share to the enterprise, Robinson had to procure $7,000 in order to get the business on its feet. Once the business was begun, he seemed to elect to conduct it by himself as his own and for his own benefit, apparently considering the conduct of the plaintiff as a repudiation of his agreement. It seems to me plaintiff failed to live up to his contract, tried to defeat it, and refused to be released with what he had invested returned to him. Robinson's attitude is that of one who did not understand the situation in which he was placed.

He was sometimes vacillating, like one not knowing how to act; but he seemingly strove to prevent a loss of all he had, and finally acted as if he regarded the plaintiff as having broken the agreement to form the corporation, and that on that account he was entitled himself to conduct the business as his own. Effort was made to give the subsequent acts of Robinson the appearance of fraud, but the only pertinent question at this stage of the inquiry was: Was the agreement to incorporate the result of a fraud perpetrated on the plaintiff?

The lease which these parties entered into negatives the plaintiff's claim of an agreement of copartnership. Its second sentence reads:

"Lease to be assigned to a corporation now being created and organized, of which tenants are the principal stockholders."

It is dated May 8, 1912, and was executed by both plaintiff and the defendant Robinson. What occurred after this trouble began is set up by plaintiff as grievances for which he claims redress; but he in a great measure occasioned these situations, and cannot, I think, justly complain. There never was a copartnership, and plaintiff has therefore failed to prove the essential allegations in the complaint. It is true that there were many episodes in the course of the business of this imperfectly formed company which might justify extended consideration, if any conspiracy such as alleged had been shown, or if the plaintiff had been the victim of deception, inducing him to agree to form a corporation; but, under the circumstances, they do not affect the merits of the questions raised herein.

However, it seems to me that the defendant Robinson has elected to regard the plaintiff as having induced him to enter into an agreement and then as having failed to live up to it. This election to continue the business without the plaintiff has resulted in Robinson's continuing to avail himself of the long-term lease and certain machinery, for the value of which the plaintiff is liable, and in order to adjust the equities of the situation, plaintiff, having no participation in the responsibilities or the profits of the business, should not be compelled to continue indefinitely answerable on these claims and helpless against Robinson's possible default. Robinson should therefore be required to secure a release of plaintiff from all liability on the several instruments jointly executed by them, or, if that cannot be obtained, then he should protect the plaintiff by a sufficient undertaking, and should also permit the plaintiff to withdraw the $2,700 in bank to their joint account.

Submit findings and decision embodying these provisions. Complaint dismissed as against the defendants Schmidt and the American Laundry Machinery Company, with costs.

Complaint dismissed as against defendants Schmidt and American Laundry Machinery Company, with costs.